UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                             CRIMINAL ACTION

V.                                                   NO. 12-1

ANDRE HANKTON ET AL.                                 SECTION "F"

ORDER

Before the Court is Andre Hankton's motion to suppress evidence. For the following reasons, the motion is DENIED.

**Background**

On June 19, 2014, a federal grand jury returned a third superseding indictment charging 13 defendants with 24 counts of federal crimes. The grave charges alleged in the indictment have been listed, summarized, and repeated throughout the procedural history of this case. This Order and Reasons assumes familiarity. This particular motion involves only one defendant, Andre Hankton.

Andre Hankton is charged in Counts 3, 7, 8, and 9 of the indictment. Count 3 charges that he was a member of a conspiracy to possess firearms in furtherance of RICO and drug conspiracies. He is accused of possessing a short-barreled shotgun in Count 9. He is also charged alongside Telly Hankton in Counts 7 and 8 for the murder of Darnell Stewart. Specifically, Count 7 charges him with murder in aid of racketeering, and Count 8 charges him with causing death through the use of a firearm in furtherance of the RICO and drug conspiracies.

1

In this motion, Hankton urges the Court to suppress evidence of a stolen handgun and a short-barrel shotgun. He submits that police officers discovered the weapons in violation of his Fourth Amendment rights while performing an illegal search of his vehicle during a routine traffic stop.

The government correctly points out that Hankton offers wishful thinking for his motion. According to the police report, a New Orleans police officer stopped Hankton's vehicle on belief that Hankton's window tint was illegally opaque. Hankton, the driver, told the officer that there was a gun in the vehicle and then exited the vehicle. The officer asked Hankton where the gun was located inside the vehicle. Hankton then contradicted himself, saying there was no gun in the vehicle. The officer instructed Hankton to return to his vehicle if there was no gun, but Hankton refused. The officer then placed Hankton in handcuffs and put him in the police car.

The officer returned to the vehicle and asked the passenger, Ms. Sierra Lee, if she knew whether there was a gun in the car. Lee stated there was no gun. The officer then looked in the back seat of the vehicle and saw a handgun in plain view. The officer seized the gun and checked its serial number; the gun had been reported stolen. The officer read Hankton his Miranda rights and placed him under arrest. Another officer arrived on the scene and

searched the back seat of the vehicle. The officer discovered a short-barrel rifle under a towel on the back seat.

I.

The exclusionary rule allows a defendant to suppress the evidentiary fruits of a violation of his Fourth Amendment rights. United States v. Pack, 612 F.3d 341, 347 (5th Cir. 2010). In the context of a traffic stop, the Court determines the existence of a Fourth Amendment violation under the standard announced by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968). The Fifth Circuit has recently re-articulated that standard:

> First, we examine whether or not the officer's decision to stop the vehicle was justified at its inception. Second, we determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. . . . If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion.

Pack, 612 F.3d at 350.

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure." Id. (quoting United States v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006). The Court must look at the "totality of circumstances" in evaluating whether or not the officer had reasonable suspicion of criminal activity. Id. "[D]ue weight must

3

be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. (quoting Terry, 392 U.S. at 27).

"While the Fourth Amendment generally prohibits warrantless seizures, the 'plain view' exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent,' and (4) the police had a lawful right of access to the item. United States v. Rodriguez, 601 F.3d 402, 407 (5th Cir. 2010).

## II.

The only authority Hankton offers in support of his motion is a vague plea to the Fourth Amendment. Hankton does not state the specific legal grounds for the alleged Constitutional violation. Nor does he dispute the narrative recited in the police report.

The officer stopped Hankton for allegedly having illegally dark window tint on his vehicle.[1] Without any prompting, Hankton told the officer that there was a gun in the vehicle. Then followed Hankton's conflicting statement and his refusal to re-enter the vehicle, all of which were reasonable cause to produce suspicion of additional criminal activity. The officer was loyal to the

---

[1] A later test performed by the officer confirmed that the window tint was illegal.

Fourth Amendment when he detained Hankton to dispel of his suspicion.

When the officer returned to the vehicle to question its other occupant, he saw a handgun in plain view in the back seat. Applying the four factors of the "plain view" doctrine, the officer properly secured the weapon. The only plausible objection to compliance with the "plain view" doctrine is that the incriminating nature of the handgun was not "immediately apparent." The Fifth Circuit, in United States v. Rodriguez, however, mutes this tune.

In Rodriguez, the Fifth Circuit held that officers responding to a domestic dispute who seized a short-barrel shotgun in plain view while conducting a valid protective sweep of the residence did not violate the Fourth Amendment. The Court reasoned, "Common sense dictates that a firearm that could be accessed by someone at the scene and used against officers or others should be unloaded, and at least temporarily, kept in a safe place." 601 F.3d at 408. When the officers seized the weapon, they were unaware that it was illegal. Yet, the Court concluded that the plain view doctrine allowed them to seize the weapon temporarily to secure it during their investigation.[2] The facts presented here lead to the same conclusion.

---

[2] The Court in Rodriguez noted, "We do not hold that any seizure of a weapon whose incriminating nature is not immediately apparent is reasonable. Rather, whereas here, the officers were conducting a legitimate protective sweep for other persons potentially within

5

The officer who stopped Hankton was conducting a legitimate traffic stop. Hankton informed him that there was a handgun in the vehicle, and the officer was aware that another person with potential access to the weapon was also in the vehicle. He properly seized the weapon to secure his own safety. Once seized for this purpose, the incriminating nature of the weapon became apparent, and it was then subject to permanent seizure as contraband. Id.

After Hankton and Lee were arrested for possessing a stolen handgun, the officers reasonably searched the backseat of the vehicle for evidence of the arrest. See Arizona v. Gant, 556 U.S. 332, 343 (2009)("[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting Thornton v. United States, 254 U.S. 615, 632 (2004)(Scalia, J., concurring)). The officers limited their search to the back seat of the vehicle where the stolen handgun was found. The short-barrel shotgun was also found on the backseat.

To underscore, Hankton does not dispute these facts or offer any helpful legal support for his motion.

---

the trailer, we think that the temporary seizure to secure the weapon was reasonable so as to allow the officers to safely conduct their investigation." 601 F.3d at 408 n. 2.

Accordingly, Andre Hankton's motion to suppress is hereby DENIED.

New Orleans, Louisiana, February 19, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE